

**SIGNED this 28th day of October, 2008.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | X | |
| MARTNKIM DINING, LLC | X | CASE NO. 07-10981 |
| d/b/a DOS RIOS RESTAURANT | X | |
| | X | |
| DEBTOR | X | CHAPTER 11 |
| | X | |
| MARTNKIM DINING, LLC | X | |
| Plaintiff | X | |
| v. | X | ADVERSARY NO. 07-1082 |
| DAVID CHANEY and | X | |
| JANALYN CHANEY | X | |
| Defendants | X | |

MEMORANDUM OPINION

The Court has reviewed the Plaintiff's Motion to Alter or Amend Judgment or Alternatively, to Amend or Make Additional Findings of Fact, For Reconsideration, to Reopen or for New Trial. Plaintiff requests pursuant to Federal Rule of Bankruptcy Procedure 7052 that this Court alter or amend the judgment as the Plaintiff respectfully disagrees with a number of the Court's findings and

1

conclusions of law and specifically requests that the Court change its ruling to find that: 1) the Defendants' restaurant sales figures were materially misrepresented; 2) Plaintiff relied upon oral misrepresentations of the Defendants; 3) Plaintiff relied as well on restaurant expense figures provided by the Defendants; 4) Plaintiff relied on other material misrepresentations; 5) Defendant, David Chaney, did breach the sales contract; and 5) the Court should change its assessment of credibility of the witnesses. Plaintiff also requests pursuant to Federal Rule of Bankruptcy Procedure 7059 that the Court reopen the record or grant a new trial in the interest of justice to allow Plaintiff to supplement or clarify Mr. Clement's testimony and to provide additional evidence on Mr. Clements' and Mr. Chaney's credibility.

Background

The Court held a three day trial of this adversary proceeding on April 22, 2008 after which the Court took this matter under advisement. The Court entered its Memorandum Opinion on May 29, 2008 in which the Court determined, based on the testimony and other evidence presented, that there was no common law fraud, no statutory fraud under §27.01 of the Business and Commerce Code of the State of Texas, no negligent misrepresentation, no violation of the Deceptive Trade Practices Act and no breach of contract. The Court found that the Plaintiff failed to sustain its burden of proof to show by a preponderance of the evidence that any actionable misrepresentations were made by the Defendants and also determined there was no breach of the sales contract by David Chaney.

Motion to Alter or Amend

Rule 7052 of the Federal Rules of Bankruptcy Procedure makes Rule 52 of the Federal Rules of Civil Procedure applicable in adversary proceedings. Plaintiff requests that this Court amend its

findings of fact and hence its judgment pursuant to Federal Rule of Bankruptcy Procedure 7052(b). The purpose of the motion to amend is to clarify essential findings or conclusions, correct errors of law or fact, or to present newly discovered evidence. *In re Rodi*, 163 B.R. 1017 (N.D. Ill. 1994). A party may make a motion to amend the findings or for the Court to make additional findings within ten days from the entry of the judgment. Generally, a motion to amend findings should be based on a "manifest error of law or mistake of fact". *In re Novak,* 223 B.R. 363 (Bankr. M.D. Fla. 1997); *see also Wal-Mart Stores Inc. v. El-Amin (In re El-Amin),* 252 B.R. 652, 656 (Bankr. E.D. Va. 2000)(purpose of rule is to correct an "egregious error of law or fact, not the resubmission of unsuccessful arguments").

The Court has reviewed the testimony of the witnesses, the relevant exhibits, and the briefs of the parties in ruling on this Motion.

Plaintiff disagrees with a number of the Court's findings and conclusions. The arguments are as follows:

    1). <u>Sales Figures Materially Misrepresented</u>

As Plaintiff points out, the Court held in its Memorandum Opinion that the sales figures on the Defendants' Profit and Loss statements were representations knowingly made by the Defendants with the intent that the Clements rely on them and that the Clements did so. However, the Court concluded that the sales experienced by Plaintiff in its first six months of operations were so similar to the Defendants' revenue representations on their Profit and Loss statements that they were not materially inaccurate. Plaintiff argues that Defendants' Profit and Loss statements were unsupported and implausible, and that the Profit and Loss statements provided by the Plaintiff at trial and those of Defendants were computed differently as 1) Plaintiff's Profit and Loss statements included the

3

6.25% sales tax as revenue and then deducted them as an expense for most of the months that Plaintiff has been in operation and that Defendants' Profit and Loss statements do not, and 2) Defendants' Profit and Loss statements along with the sales tax did not include take-out and catering income or employee sales.

Plaintiff claims basically that it is not credible that Defendants had ever achieved the revenues that they had represented. If that is true then the Plaintiff did better than the Defendants virtually from the first day of its operations. Plaintiff claims that the Court accepted Defendants' representations about their historical cash sales without the benefit of any supporting documentation and then estimated them to be approximately 2/3 of total sales or 67%. Plaintiff asserts that its documented historical cash sales of 56.3% are more credible. In Mr. Clements' trial testimony, he further claims that Defendants' counsel had indicated to him at his deposition that 60% was an industry standard.[1] Plaintiff's argument is that if one adds either number based on those percentages to Defendants' non-cash sales, that total revenues fall short of those represented by Defendants on their Profit and Loss statements.

The Court did not make its decision based on the industry standard. Nor did the Court apply the Plaintiff's cash sales percentage to the Defendants. To do so would be improper, i.e. mixing apples with oranges.

The 2005 Profit and Loss statement of Defendants showed total sales of $417,300.00. This averaged to $34,775.00 per month. Total sales revenue for the six month period in 2006 in which the Defendants operated the restaurant was $197,295.00 This is an average of $32,882.50 per month in gross sales($197,295.00/6months).

---

[1] That statement is, of course, evidence of nothing.

4

The Profit and Loss statements of Plaintiff's first months of operation as contained in Exhibit D-14 show that for July through December of 2006 gross sales were $33,143.21, $35,768.23, $34,706.03, $34,689.80, $33,053.71 and $31,261.18 respectively which equals $202,622.16. This averages to $33,770.36 per month ($202,622.16/6). Therefore, Plaintiff's first six months of sales exceeded the Defendants' last six months of sales by $887.86 per month. And, if, in fact, the Plaintiff's sales numbers included 6.25% sales tax, then its sales numbers without sales tax included would be a monthly average of only $31,659.71. Plaintiff claims the Defendants' numbers do not include sales tax collected on cash sales.[2] Assuming that is true, then deducting sales tax from the Defendants' 2006 monthly average sales of $32,882.50 renders monthly gross sales of $30,827.35 which is $832.36 per month less than Plaintiff's monthly average sales without sales tax for 2006.

Likewise, for 2005, the same deduction of 6.25% renders Defendants' sales to be $32,601.56 per month. This is $1,000.00 less than Plaintiff's 2006 sales without tax. As stated in the Memorandum Opinion, the sales experienced by the Plaintiff after purchasing the restaurant were effectively the same as experienced by the Defendants before they sold the restaurant. This is with or without sales tax included in the Defendants' gross sales. Therefore, it is hard to imagine that the representation of revenue contained in the Defendants' annual Profit and Loss statements was inaccurate, much less materially false.

After six month's of operations, the Plaintiff cut its hours of operations and its expenses continued to increase. As such, any comparison after the six months would be apples to oranges.

---

[2]Plaintiff claims that the fact that the sales tax is not shown as an expense on the Defendants' Profit and Loss statements indicates that sales tax was netted out from gross revenues before reporting cash sales in addition to the fact that the Defendants' Quickbooks included sales tax as an expense for credit card and check sales. The Court believes the better interpretation of the record is that the Defendants' revenue numbers included sales tax even on the cash sales which went unreported to the State of Texas. But this does not matter as any difference in gross sales, with or without sales tax included, is marginal.

Plaintiff further claims that the Defendants' gross revenues did not include the take out and catering income nor the employee sales. This was a disputed point at trial and already taken into consideration by this Court in its decision. The sales experienced by Plaintiff after purchasing the restaurant were effectively the same as experienced by the Defendants before they sold the restaurant (regardless of take-out, catering or employee sales), and, therefore, the representation of the revenues contained in the Defendants' Profit and Loss statements did not materially misrepresent the restaurant's gross sales.

2). <u>Reliance Upon Oral Misrepresentations</u>

Plaintiff claims that Defendants also provided oral information, most significantly regarding revenues, payroll expenses and costs of goods sold and that Plaintiff relied on this oral information. Whether the drive-through and catering sales were reflected on the Defendant's Profit and Loss statements is addressed above. Plaintiff knew that the payroll expenses were incorrect as Mr. Chaney told Mr. Clements he had two employees he treated as independent contractors. Mr. Clements testified that is one of the reasons he increased this expense when he created his own projected financials prior to purchasing the business. He also changed the cost of goods sold on the Defendants' Profit and Loss statements by rather drastically reducing this expense. His stated reason was that he knew the Defendants ran some of their personal expenses through this channel. Mr. Clements unilaterally made these changes even though he had no prior experience in the restaurant business. The reduction in cost of goods sold was from $165,357.19 to $137,610.00. Mr. Clements may have relied on some of this information; however, there is insufficient evidence in the record to establish any of these statements were materially false. And, by using his own numbers, Mr. Clements defeats his own claim of reliance.

### 3). Reliance on Expense Representations

Plaintiff asserts that Mr. Clements translated the expense numbers on the Defendants' Profit and Loss statements into percentages of sales rounded to the nearest decimal point. Mr. Clements claims that he used the Defendants' represented percentages exactly in a number of categories: credit card, equipment rental, NSF, and postage. He states that he then used others that were very close to those represented by Defendants in other categories and made adjustments to others based upon Defendants' oral representations. Mr. Clements testified that he used the credit card percentage which was 0.2% of sales and that this expense percentage turned out to be incorrect. Such variance, however is de minimus. And, no other evidence was presented as to the alleged misrepresentation of other categorical expense percentages except the payroll and the cost of goods sold which items Mr. Clements knew were incorrect and which have been discussed above. Mr. Clements also complains of the equipment rental percentage of 0.6%, the NSF of 0.1% and the postage of 0.1%. However, these are all de minimus in the overall picture. All the categories of which Plaintiff complains are not material except for payroll and costs of goods which as we know Mr. Clements did not rely on. That's why he used his own numbers in his own Profit and Loss projections before he and his wife bought the business. The Court cannot find the required material misrepresentation or reliance.

### 4). Other Material Misrepresentations

Plaintiff claims the Clements relied on the Defendants' statements that they could operate the restaurant on a part-time basis and use existing employees for management. This statement is not a representation of an existing material fact. It is merely an opinion and is not an actionable misrepresentation.

5). Breach of Contract

In its Memorandum Opinion the Court declined to grant relief to the Plaintiff on this cause of action. The Plaintiff now requests the Court revisit this issue. There is nothing to revisit. Although Mr. Chaney was contractually obligated to be at the restaurant for thirty (30) days beyond the closing date to assist the Clements with an orderly transition of the restaurant's business, the evidence at trial reflected a dispute between both parties as to whether Mr. Chaney had worn out his welcome at the restaurant and whether the Clements did not want him there. The Clements never called him to request that he return or to determine why he was not coming to the restaurant. Further, the restaurant made virtually the same amount of money in July after the Clements took over as it did in June while the Defendants were running it. There were no damages as a result of him not being there. The ruling stands.

6). Credibility

Plaintiff argues that the Defendants' acknowledged misconduct (filing knowingly false and fraudulent state sales tax returns and treating actual employees as independent contractors) undermines their credibility on every contested issue and that the Clements are more worthy of belief. Plaintiff thus requests that this Court re-assess the credibility of the key witnesses. The Court recognized in its opinion that Mr. Chaney ran his business in an illegal manner by not reporting and paying sales tax on cash sales. However, this case did not turn solely on the credibility of the witnesses. The Clements' case relied primarily on the revenue figures in the Defendants' Profit and Loss statements and the Defendant' first six months of operations in 2006 prior to closing the sale to the Plaintiff; and those numbers were not materially different from the first six months that Plaintiff operated the restaurant.

This was a case where the evidence fell short of establishing that there were any actionable misrepresentations by the Defendants. Had the Court found that the Defendants misrepresented the income on the Profit and Loss statements, the outcome of this proceeding would have been different. However, Plaintiff did not meet its burden on this issue. The Court is sympathetic to the fact that the Clements entered into a business they knew nothing about and no doubt attempted to operate it proficiently and successfully. However, after six months of ownership, Plaintiff had changed its hours of operation and had added a significant number of employees which increased its payroll expenses materially. The fact that the restaurant lost money after the Clements purchased it is not grounds in itself to claim fraud against the Defendants.

Introduction of Additional Evidence Regarding Credibility

Plaintiff believes that this Court has not accurately assessed the credibility of two key witnesses: Kim Clements and David Chaney, and therefore, requests that this Court reopen the record or grant a new trial in the interest of justice to allow Plaintiff to supplement or clarify Mr. Clements' testimony and to provide additional evidence regarding Mr. Clements' and Mr. Chaney's credibility.

This part of the motion will be treated as a motion for reconsideration under Fed. R. Civ. P. 59(e). *See Fletcher v. Apfel,* 210 F.3d 510, 511-12 (5th Cir. 2000)("A motion to reconsider which challenges a prior judgment on the merits will be treated as a Federal Rule of Civil Procedure 59(e) motion if it is served within ten days after entry of the judgment.").

Federal Rule of Bankruptcy Procedure Rule 7059 states:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1). . . .and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of

9

> the United States. On a motion for new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions and direct the entry of a new judgment.

Fed. Rule Bankr. Pro. 7059.

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. Hydrochem Inc.,* 367 F.3d 473, 479 (5th Cir. 2004). The Fifth Circuit has held "that such a motion is not the proper vehicle for rehashing evidence, legal theories or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F. 3d at 479; *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990). Rather Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet*, 367 F.3d at 479.

In *Lavespere v. Niagara Machine & Tool Works, Inc.*, the 5th Circuit recognized that while a district court has considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration, such discretion is not limitless. 910 F.2d 167 (5th Cir. 1990). There are two important judicial imperatives relating to such a motion: 1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts. *Id.* (citations omitted). The task for the district court is to strike the proper balance between these competing interests. *Id.*

In *Lavespere,* the 5th Circuit considered four factors in concluding that the motion to reconsider should be granted. These factors include: 1) the reasons for the moving party's default; 2) the importance of the omitted evidence to the moving party's case; 3) whether the evidence was available to the non-movant before it responded to the summary judgment motion; and 4) the likelihood that the non-moving party will suffer unfair prejudice if the case is reopened. *Id.* at 174.'

Plaintiff apparently believes that introducing further evidence on Mr. Clements and Mr. Chaney's credibility will somehow change the Court's decision in this proceeding. As stated above, credibility was not the deciding issue in this case. The Court recognized Mr. Chaney's predisposition for not being on the up and up. However, the Court did not believe Mr. Clements' testimony regarding when he actually obtained the monthly Quickbooks reports from the Defendants because it made no sense within the totality of the circumstances as they existed at that time. That decision is unlikely to change for the reasons stated in the Memorandum Opinion dated May 29, 2008. Further, the credibility evidence was available prior to the entry of the judgment in this case and is not new evidence. It is actually evidence that should have been introduced at the initial trial if Plaintiff believed it would have bearing on the outcome. An Order Denying Plaintiff's Motion will be entered of even date herewith.

###